## IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS

| | |
|---|---|
| PAYLESS SHOESOURCE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07 C 174 |
| | ) Div. 9 |
| LEE A. MIRRER | ) |
| Serve at: | ) |
| 3 Lilac Lane | ) |
| Ayer, MA 01432 | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S VERIFIED PETITION FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW Plaintiff, Payless ShoeSource, Inc., by and through undersigned counsel, and files this Verified Petition against Defendant, Lee A. Mirrer ("Mirrer"), and alleges as follows:

### PARTIES AND NATURE OF SUIT

1.      Payless ShoeSource, Inc. (collectively, with its subsidiaries and affiliates, "Payless") is one of the largest specialty family footwear retailers in the United States, with stores throughout the United States, and also in (among other places) Puerto Rico, and the U.S. Virgin Islands, Guam, Saipan, Canada, and Central America. Payless stores feature fashionable, quality footwear for women, men and children at affordable prices in a self-selection format.

2.      Mirrer was a Payless employee who most recently served as Director of Regional Operations for Payless' Northeastern market which consists of New York, Connecticut, Massachusetts, Maine, Rhode Island, New Hampshire and Vermont.

3.      This action is based upon Defendant's breaches of her Noncompetition and Company Work Product Agreement with Payless made as of April 7, 2006 (the

EXHIBIT

1

"Noncompetition Agreement") and two Repayment Agreements, dated March 22, 2005 (the "First Repayment Agreement") and October 14, 2005 (the "Second Repayment Agreement"), respectively (collectively, the "Repayment Agreements"). Copies of the Noncompetition Agreement and the Repayment Agreements are attached hereto as Exhibits A, B, and C, and their terms are incorporated herein.

### JURISDICTION AND VENUE

      4.     Payless Shoesource, Inc. is a Delaware corporation, authorized to do business in Kansas, with its principal place of business located in Topeka, Shawnee County, Kansas.

      5.     Upon information and belief, Mirrer recently moved to, and is a citizen and resident of, Massachusetts. Before Mirrer moved to Massachusetts, she was, upon information and belief, a citizen and resident of New Hampshire.

      6.     Mirrer's Noncompetition Agreement contains a choice of law and forum-selection provision, providing that all matters arising under the Noncompetition Agreement shall be governed by and construed in accordance with the laws of the State of Kansas and that all actions and proceedings arising out of or relating directly or indirectly to the Noncompetition Agreement shall be filed and litigated exclusively in any state court or federal court located in the City of Topeka, Kansas or in Shawnee County, Kansas.

      7.     Jurisdiction and venue in this Court are proper pursuant to K.S.A. §§ 60-308, 60-603 and 60-605 in that Payless and Mirrer entered into a contract within the State of Kansas, which provides it will be governed by and construed in accordance with the laws of the State of Kansas. The Parties further consented to the jurisdiction of the Courts of Shawnee

2

819839.10

County, Kansas. Venue is proper in this Court as Payless maintains its principal place of business in Shawnee County, Kansas and the threatened harm is aimed at this county.

## ALLEGATIONS COMMON TO ALL COUNTS

8.      Payless is engaged in the retail shoe business. It is one of the largest retail sellers of shoes in the United States, and currently operates the nation's largest chain of self-service shoe stores.

9.      In conjunction with its business, Payless has expended a great deal of time, money and effort in developing and maintaining its confidential, proprietary and trade secret information. Payless compensates its employees to, among other things, develop and preserve goodwill and relationships on Payless' behalf and to develop and preserve confidential and competitively valuable business information for Payless' exclusive ownership and use.

10.     Payless' goodwill, trade secrets and confidential and proprietary information constitute a substantial portion of the value of Payless' business and give Payless a significant competitive advantage in the retail shoe business. The improper use or disclosure of Payless' confidential, proprietary and trade secret information could result in a loss of Payless' goodwill and be very harmful to Payless and its competitive position in the marketplace.

11.     Mirrer joined Payless in March, 2005. During her employment with Payless, Mirrer was a highly-paid manager and then an executive, holding the titles of District Manager and Director of Regional Operations.

12.     Mirrer was Director of Regional Operations for Payless' Northeastern region of the United States from on or about October 14, 2005 until January 8, 2007.

13.     On January 2, 2007, Mirrer announced she was resigning from Payless in order to join DSW, Inc. ("DSW"). According to public filings, DSW is, upon information and

3

819839.10

belief, a self-service shoe store chain that has approximately 220 shoe stores located in 35 states coast-to-coast.  DSW is a direct competitor of Payless.  Similar to Payless, DSW features self-service fixtures that allow customers to view, touch, and try on the product without relying on salespersons to check availability of product.

        14.    As Payless' Director of Regional Operations for the Northeast Region, Mirrer's responsibilities for Payless included leading multiple districts in the United States within the Northeastern region.  Mirrer's specific responsibilities as Director of Regional Operations included, among other things, ensuring that sales, profits, and inventories were maximized in her region and that expenses were controlled to ensure commitments to Payless' associates, customers, shareowners, and business owners were met or exceeded.  Mirrer was also tasked with executing promotional plans and meeting sales/profits and targets set for her region.

        15.    Mirrer was well-compensated by Payless.  Her compensation, including salary and bonuses, was in excess of $150,000 for 2006.  In addition to her salary and bonus, Mirrer was a participant in Payless' Stock Incentive Plan, under which, subject to certain terms and conditions, Mirrer was granted shares of stock and options to purchase shares of stock in the company.  Mirrer also received benefits including, among other things, an automobile allowance and reimbursement for business-related expenses.

        16.    As a Director of Regional Operations, Mirrer had access to confidential, proprietary and trade secret information of Payless including, among other things, such information concerning:

        •    the sales and profit results by store performances of Payless' stores within Mirrer's Northeastern region as well as the remainder of the United States;

4

- recent and new store concepts developed and under development by Payless;

- Payless' past and future promotional calendars (for product, marketing, and pricing strategies);

- product performance (including Payless' strengths, weaknesses, sales promotions, sales volumes, and profitability by product line, in connection with calendar year 2006 sales);

- Payless' strategies and analyses relating to store openings, targets and performance for 2006 and 2007;

- weekly sales figures by district, zone, and concept;

- current and prospective real estate deals;

- employee compensation and evaluations; and

- product distribution and planning.

17.   Mirrer attended a Payless regional meeting in Overland Park, Kansas in November, 2006, in which she received confidential, competitively valuable and trade secret information regarding Payless' plans to improve store operations for 2007 and Payless' 2007 performance strategies.

18.   Mirrer's last day of employment at Payless was January 8, 2007.   On information and belief, at some point thereafter Mirrer joined and is now working for DSW.

## MIRRER'S CONTRACTUAL OBLIGATIONS

19.   Because of the confidential, proprietary and competitively valuable trade secret business information that Payless provided to Mirrer, Payless required that Mirrer sign the Noncompetition Agreement.  Mirrer's Noncompetition Agreement places limited restrictions on

5

819839.10

Mirrer's activities following her Payless employment.   Mirrer's employment with DSW is prohibited by her Noncompetition Agreement with Payless, which contractually prohibits Mirrer from working for a "Competing Business" for six (6) months following termination of her employment with Payless.

20.   Mirrer received substantial consideration for signing her Noncompetition Agreement, including eligibility to receive a grant of stock appreciation rights, stock options and shares of restricted stock from Payless.  Mirrer also received an increase in salary from $135,000 to $150,000 and a relocation bonus equivalent to two months of her salary.

21.   Mirrer agreed in Paragraph 1(a) of her Noncompetition Agreement that she would not directly or indirectly use or disclose any of Payless' Confidential Information for any purpose except for authorized use or disclosure within the scope of her employment with Payless.  "Confidential Information" is defined in Paragraph 1(d) of the Noncompetition Agreement as follows:

> "'Confidential Information' means any non-public information pertaining to Payless' business. Confidential Information includes information disclosed by Payless to Executive, and information developed or learned by Executive during the course of or as a result of Executive's employment with Payless, which Executive also agrees is Payless' property. Executive further agrees that any item of intellectual or artistic property generated or prepared by Executive, by Executive or with others, in connection with Executive's employment by Payless is Payless' sole property and shall remain so unless Payless otherwise specifically agrees in writing.  Confidential Information includes, without limitation, information and documents concerning Payless' processes; suppliers (including Payless' terms, condition and other business arrangements with suppliers); supplier and customer lists; advertising and marketing plans and strategies; profit margins; seasonal plans, goals, objectives and projections, compilations, analyses and projections regarding Payless' divisions, businesses, product segments, product lines, suppliers, sales and expenses; files; trade secrets and patent applications (prior to their being public); salary, staffing and employment information (including

6

information about performance of other executives); and 'know-how', techniques or any technical information not of a published nature relating, for example, to how Payless conducts its business."

22. Under paragraph 2(a) of Mirrer's Noncompetition Agreement, Mirrer agreed that for a period of six (6) months after the separation of her employment, she would not:

    (i)    either alone or in concert with others, directly or indirectly, own, be a partner in, be a member of, operate, be employed by, or act as an advisor, consultant, agent, officer, director or independent contractor for, or otherwise have an interest in, a Competing Business; or

    (ii)   solicit for employment, offer employment to, or hire or disclose information to or otherwise aid or assist any other person or entity other than Payless in soliciting for employment, offering employment to, or hiring, any employee of Payless.

23. Paragraph 2(b) of Mirrer's Noncompetition Agreement defined "Competing Business." Under Paragraph 2(b)(i) of the Agreement, "Competing Business" was defined to include:

    (i)    any retail business with gross sales or revenue in the prior fiscal year of more than $25 million (or which is a subsidiary, affiliate or joint venture partner of a business with gross sales or revenue in the prior fiscal year of more than $25 million) which sells footwear, socks, underwear, hosiery, sleepwear, or accessories at retail to consumers at price points competitive, or likely to be competitive with Payless ... within 10 miles of any Payless store or the store of any wholesale customer of Payless in the United States, or anywhere in any foreign country in which Payless has retail stores, franchises or wholesale customers....

24. In Paragraph 2(c) of the Noncompetition Agreement, Mirrer specifically acknowledged and agreed that the restrictions in Paragraph 2(a) of the Noncompetition Agreement are reasonable and enforceable.

25. In Paragraph 6 of the Noncompetition Agreement, Mirrer agreed that in the event of a breach or threat of breach of any of the provisions of the Noncompetition

819859.10

Agreement, Payless would be entitled to an injunction to restrain any such breach or threat of breach.

## COUNT I – MIRRER'S BREACH OF HER NONCOMPETITION AGREEMENT

26.    Payless hereby incorporates by reference paragraphs 1 through 25 set forth above.

27.    Mirrer announced she was leaving Payless to join DSW as its Regional Manager for the Northeast market.   DSW is a Competing Business as defined in Mirrer's Agreement with Payless.

28.    Mirrer's last day of work at Payless was January 8, 2007.

29.    Payless sent a letter dated January 8, 2007, to DSW advising DSW that Mirrer is subject to certain contractual obligations arising out of her Noncompetition Agreement with Payless. A copy of the letter is attached hereto as Exhibit D and is incorporated herein.

30.    Payless sent a letter dated January 11, 2007, to Mirrer reminding her of her obligations to Payless.  A copy of the letter is attached hereto as Exhibit E and is incorporated herein.

31.    Despite these letters, Mirrer has joined DSW.  Mirrer's employment with DSW breaches her Noncompetition Agreement with Payless.

32.    DSW is a significant competitor of Payless.  Payless and DSW sell shoes at retail, at competitive price points, to consumers throughout the United States.  In many instances, both Payless and DSW have stores in the same vicinity.  DSW's own public filings list Payless as a competitor.

8

33.     Mirrer is well-aware of the competition between Payless and DSW. Mirrer also is aware, _inter alia_, of internal marketing studies within Payless which reflect the competition between DSW and Payless.

34.     Payless has complied with its obligations to Mirrer under the Noncompetition Agreement.

35.     Unless Mirrer is enjoined from competing with Payless in violation of her Noncompetition Agreement, Payless will face serious and irreparable harm. Payless has no adequate remedy at law to protect itself from the continuing damage and injury which will be caused by Mirrer's violation of her obligations under her Noncompetition Agreement. Unless enjoined Mirrer's conduct will, _inter alia_, cause significant and irreparable harm and injury to Payless.

WHEREFORE, Payless prays for the Court to enter judgment in favor of Payless and against Mirrer and for the Court to:

(a)     enjoin Mirrer temporarily, preliminarily and permanently for a period of six (6) months, from engaging in any Competing Business, as defined in Mirrer's Noncompetition Agreement, including but not limited to enjoining Mirrer from working for DSW in violation of the Noncompetition Agreement;

(b)     enjoin Mirrer temporarily, preliminarily and permanently from violating her other obligations under the Noncompetition Agreement;

(c)     award Payless damages for Mirrer's breach of the Noncompetition Agreement in an amount to be proven at trial;

9

(d) award Payless its costs and expenses, including its reasonable attorneys' fees, incurred in this action in accordance with the Noncompetition Agreement; and

(e) order such other and further relief as the Court may deem just and proper.

## COUNT II – BREACH OF THE REPAYMENT AGREEMENTS

36. Payless hereby incorporates by reference paragraphs 1 through 35 set forth above.

37. During Mirrer's employment with Payless, Mirrer executed two Repayment Agreements.

38. These Repayment Agreements required Mirrer to remit relocation and related expenses incurred on behalf of Payless in the event Mirrer voluntarily terminated her employment within 24 months of March 22, 2005 and October, 14, 2005, respectively.

39. Mirrer voluntarily terminated her employment as of January 8, 2007.

40. Pursuant to these Repayment Agreements, Payless advanced relocation and related expenses in the amount of approximately $41,155. Under the Repayment Agreements, Mirrer owes Payless $11,683.27.

41. Payless has complied with its duties and obligations under the Repayment Agreements.

42. Payless has made demand on Mirrer to remit the outstanding balance of $11,683.27, but Mirrer has failed to pay what she owes.

43. Mirrer has breached her obligations under the Repayment Agreements by failing to pay Payless what she owes under the Repayment Agreements.

10

44.    As a result of Mirrer's breach of her obligations under the Repayment Agreements, Payless has been damaged.

WHEREFORE, Payless prays for the Court to enter judgment in favor of Payless and against Mirrer and for the Court to:

    (a)    award Payless compensatory damages for Mirrer's breach of the Repayment Agreements in an amount to be proven at trial;

    (b)    award Payless its costs and expenses, including its reasonable attorneys' fees incurred in this action;

    (c)    order such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**BRYAN CAVE LLP**

By: _____
Robert M. Thompson    KS #14673
Staci Olvera Schorgl    KS #19753
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105
(816) 374-3200 (Telephone)
(816) 374-3300 (Facsimile)

ATTORNEYS FOR PLAINTIFF

*Of Counsel*
Mark Deiermann
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone:    (314) 259-2000
Facsimile:    (314) 259-2020
ATTORNEYS FOR PLAINTIFF

11

819639.10

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS

PAYLESS SHOESOURCE, INC.          )
                                   )
      Plaintiff,                 )
                                   )
v.                                 )          Case No._____
                                   )
LEE A. MIRRER,                     )
                                   )
      Defendant.                 )

## PLAINTIFF'S MOTION FOR A
## TEMPORARY RESTRAINING ORDER

      COMES NOW Plaintiff, Payless ShoeSource, Inc. ("Payless"), and moves this

Court pursuant to K.S.A. § 60-901 for an order restraining Defendant, Lee A. Mirrer ("Mirrer")

from violating the noncompetition and confidentiality provisions of Mirrer's Noncompetition

and Company Work-Product Agreement (the "Agreement") with Payless.  More specifically,

Payless moves this Court to restrain and enjoin Mirrer, temporarily, pending a hearing on

Payless' request for a preliminary injunction, from:

      (a)    being employed by DSW;

      (b)    being employed by any other "Competing Business."  "Competing
             Business" is defined in Paragraph 2(b) of the Agreement as including:

             (i)    any retail business with gross sales or revenue in the
                    prior fiscal year of more than $25 million (or which
                    is subsidiary, affiliate or joint venture partner of a
                    business with gross sales or revenue in the prior
                    fiscal year of more than $25 million) which sells
                    footwear, socks, underwear, hosiery, sleepwear, or
                    accessories at retail to consumers at price points
                    competitive, or likely to be competitive with
                    Payless (e.g. including, without limitation, Wal-
                    Mart Stores, Inc.; Sears Holdings Corporation;
                    Target Corporation; Foot Star, Inc.; Aldo Shoes,
                    Inc.; Gennesco Inc; Brown Shoe Company, Inc.;
                    Shoe Carnival, Inc.; Kohl's Corporation; Liz
                    Claiborne, Inc.; Big 5 Sporting Goods Corporation;
                    J.C. Penney Company; Shoe Zone, Limited, Bata,
                    Limited) within 10 miles of any Payless store or the
                    store of any wholesale customer of Payless in the
                    United States, or anywhere in any foreign country

in which Payless has retail stores, franchises or
wholesale customers;

(c)   directly or indirectly using or disclosing any of Payless' "Confidential
Information." "Confidential Information" is defined in Paragraph 1(d) of
her Agreement as:

> "'Confidential Information' means any non-public
> information pertaining to Payless' business.
> Confidential Information includes information
> disclosed by Payless to Executive, and information
> developed or learned by Executive during the
> course of or as a result of Executive's employment
> with Payless, which Executive also agrees is
> Payless' property. Executive further agrees that any
> item of intellectual or artistic property generated or
> prepared by Executive, by Executive or with others,
> in connection with Executive's employment by
> Payless is Payless' sole property and shall remain so
> unless Payless otherwise specifically agrees in
> writing. Confidential Information includes, without
> limitation, information and documents concerning
> Payless' processes; suppliers (including Payless'
> terms, condition and other business arrangements
> with suppliers); supplier and customer lists;
> advertising and marketing plans and strategies;
> profit margins; seasonal plans, goals, objectives and
> projections, compilations, analyses and projections
> regarding Payless' divisions, businesses, product
> segments, product lines, suppliers, sales and
> expenses; files; trade secrets and patent applications
> (prior to their being public); salary, staffing and
> employment information (including information
> about performance of other executives); and 'know-
> how', techniques or any technical information not
> of a published nature relating, for example, to how
> Payless conducts its business."

As grounds for this Motion, Payless incorporates herein by reference the matters
set forth in its Verified Petition and in the Brief filed in support of this Motion. Briefly, the
pertinent facts include:

1.   Mirrer signed the Agreement as of April 7, 2006. The Agreement contains
a limited noncompete provision that, among other things, obligates Mirrer not to work for any

"Competing Business" for six months following the termination of her employment with Payless.

      2.    Mirrer has been employed by Payless in highly paid management and executive-level positions since March 2005, holding the titles of District Manager and Director of Regional Operations ("DRO"). By virtue of her high-level positions with Payless, Mirrer had access to very confidential, competitively valuable and trade secret information of Payless.

      3.    On January 2, 2007, Mirrer announced she was leaving Payless in order to join DSW as its Regional Manager for the Northeast Region, a position very similar to the position she held at Payless. Mirrer's last day of employment at Payless was January 8, 2007, and Mirrer started at DSW some time thereafter.

      4.    Because of Mirrer's knowledge of Payless' confidential and proprietary information, Mirrer is in a position at DSW to compete unfairly with Payless and to have a significant adverse effect on Payless' business.

      5.    Mirrer's employment with DSW violates her Agreement with Payless. Mirrer agreed not to be employed, for at least six months after termination of her employment with Payless, by any "Competing Business." Mirrer's Agreement provides, in pertinent part:

> "2. **Noncompetition**. (a) Both during Executive's employment, and for the period ending six (6) months after the separation of Executive's employment (for any reason), Executive shall not:
>
> (i)    either alone or in concert with others, directly or indirectly, own, be a partner in, be a member of, operate, be employed by, or act as an advisor, consultant, agent, officer, director, or independent contractor for, or otherwise have an interest in, a Competing Business . . . .
>
> . . .
>
> (b)    The term "Competing Business" shall include, but not be limited to:
>
> (i)    any retail business with gross sales or revenue in the prior fiscal year of more than $25 million (or which is subsidiary,

affiliate or joint venture partner of a business with gross sales or revenue in the prior fiscal year of more than $25 million) which sells footwear, socks, underwear, hosiery, sleepwear, or accessories at retail to consumers at price points competitive, or likely to be competitive with Payless (e.g. including, without limitation, Wal-Mart Stores, Inc.; Sears Holdings Corporation; Target Corporation; Foot Star, Inc.; Aldo Shoes, Inc.; Gennesco Inc; Brown Shoe Company, Inc.; Shoe Carnival, Inc.; Kohl's Corporation; Liz Claiborne, Inc.; Big 5 Sporting Goods Corporation; J.C. Penney Company; Shoe Zone, Limited, Bata, Limited) within 10 miles of any Payless store or the store of any wholesale customer of Payless in the United States, or anywhere in any foreign country in which Payless has retail stores, franchises or wholesale customers . . . ."

6.    DSW is a direct competitor of Payless. Both DSW and Payless have retail shoe stores located throughout the United States, with DSW having approximately 220 stores in 35 states and Payless having more than 4,000 stores throughout the 50 states. Payless and DSW sell shoes at competitive price points (i.e., both sell shoes within the $10 to $35 price range), and the chains share customers. In many instances, Payless and DSW have stores in the same vicinity. Moreover, like Payless, DSW stores feature self-service fixtures that allow customers to view, touch, and try on the product without relying on salespersons to check availability of product.

7.    Mirrer's employment by Payless in high-level positions gave her access to substantial confidential, competitively valuable and trade secret information of Payless – information which would give both her and DSW a competitive edge in the shoe business if Mirrer were allowed to renege on her contractual obligations and work for DSW. Mirrer had access, for example, to Payless' confidential information pertaining to or reflecting the sales, profits and performance of Payless' stores; recent and new store concepts developed and under development; past and future promotional calendars for product, marketing, and pricing strategies; product performance, including strengths, weaknesses, sales, promotions, sales volumes, and profitability by product line; strategies and analyses relating to store openings,

targets, and performance for 2006 and 2007; weekly sales figures by district, zone, and concept; current and prospective real estate deals; employee compensation and evaluations; and product distribution and planning.

8.    If allowed to work for DSW, Mirrer would be in a position to use Payless' confidential information to DSW's competitive advantage and to Payless' detriment.

9.    The noncompetition and confidentiality provisions in Mirrer's Agreement with Payless are reasonable and enforceable in view of Mirrer's position, duties, and responsibilities with Payless and the confidential information to which she had access. Mirrer expressly acknowledged in her Agreement that the restrictions are reasonable and necessary to prevent her from having an unfair competitive advantage over Payless and to protect Payless' confidential information. *See* Agreement, Paragraph 7.

10.    Injunctive relief is necessary to prevent the irreparable harm and injury which would occur if Mirrer is permitted to breach the contractual obligations she owes to Payless. Mirrer agreed in her Agreement, that Payless is entitled to an injunction to prevent her from breaching the Agreement. *See* Agreement Paragraph 6.

11.    Mirrer's conduct, unless restrained, stands to cause serious and irreparable harm to Payless and to injure Payless' business. Mirrer had access to very confidential and competitively valuable information while employed at Payless. The misuse or disclosure of such information by Mirrer in connection with her DSW employment  could result in a loss of Payless' goodwill and would be very harmful to Payless and its competitive position in the marketplace.

12.    Payless has no adequate remedy at law to protect itself from the continuing, real, immediate, and irreparable damage and injury which will be caused by Mirrer's employment by DSW in violation of the Agreement.

WHEREFORE, for the reasons set forth in Payless' Verified Petition, this Motion, and the Brief filed in support of this Motion, Payless requests that the Court grant its request for a temporary restraining order.

Respectfully submitted,

BRYAN CAVE LLP

By:

Robert M. Thompson        KS #14673
Staci Olvera Schorgl       KS #19753
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105
(816) 374-3200 (Telephone)
(816) 374-3300 (Facsimile)

ATTORNEYS FOR PLAINTIFF

*Of Counsel*
Mark Deiermann
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone:     (314) 259-2000
Facsimile:      (314) 259-2020
ATTORNEYS FOR PLAINTIFF

831501.2                    6

## VERIFICATION

STATE OF KANSAS          )
                         ) ss:
COUNTY OF SHAWNEE        )


Michael R. Thompson, being duly sworn upon his/her oath, states as follows:

1.      I am the Division Senior Vice President of Retail Operations Northeast and International of Payless ShoeSource, Inc., the plaintiff herein, am over 18 years of age and am competent to execute this Verification.

2.      The facts alleged in the Verified Petition are based on matters known personally to me and/or on information provided to me by others within Payless ShoeSource, Inc., and are true and correct to the best of my knowledge, information and belief.


_____
Michael R. Thompson


Signed and sworn to before me on February 2, 2007, by Michael R. Thompson.


NANCY J. ROHN
NOTARY PUBLIC
STATE OF KANSAS
MY APPT. EXPIRES 6/25/2009

_____
Nancy J. Rohn – Notary Public

My Commission Expires:  June 25, 2009

819839.9