## REPAYMENT AGREEMENT

Date: March 22, 2005

Dear Ms. Mirrer:

In connection with your offer to join Payless ShoeSource, we have agreed to the following:

If Payless ShoeSource ("Payless") has

    (a)    reimbursed any expenses to you, or

    (b)    paid any signing bonus or special bonus,

then the aggregate of such amounts so paid or reimbursed will be "earned out" proportionately, month by month, over the 24 month period immediately following your start date in your new job.

If you voluntarily terminate employment with Payless prior to the end of the 24-month period, then you shall immediately pay to Payless the then unearned portion. If you die before the end of that period, no amount would be payable to Payless under this agreement. In the event that you become disabled during that period, if you remain disabled through the end of that period or if you recover from your disability and return to work for Payless through the end of that period, then no amount would be payable to Payless under this agreement.

If an amount becomes due to Payless under this agreement or otherwise and you have not repaid that amount in full to Payless, then Payless may reduce any amount which you owe to you as wages, compensation, bonus, deferred compensation or otherwise thereafter by any such unpaid amount which you owe and fail to pay upon demand.

Nothing in this letter agreement should be construed to form an employment agreement, either express or implied between you and Payless, and nothing herein shall be deemed to alter the employment at will relationship which exists between you and Payless.

This letter agreement has been executed by Payless at Payless's corporate headquarters and principal executive offices in Topeka, KS. Any questions or other matter arising under this Agreement, whether of validity, interpretation, performance or otherwise, shall be governed by and construed in accordance with the laws of the State of Kansas applicable to agreements made and to be performed in such state without regard to such state's conflicts of law provision. All actions and proceedings relating directly or indirectly to this Agreement shall be litigated in any state court or federal court located in Topeka, KS. You and Payless expressly consent to the jurisdiction of any such court and to venue therein and consent to service of process if made upon the Secretary of State of the State of Missouri or if made at your last known address on the records of Payless.

If this letter agreement correctly reflects our agreement, please sign and return this letter agreement.

Executive, Payless ShoeSource    3/25/05        Lee Mirrer

**Exhibit B**



group of companies
3231 s.e. sixth st.
topeka, ks 66607-2207
785.233.5171

March 22, 2005

Lee Mirrer
2024 Foxglove Circle
Bellport, NY 11713

Dear Ms. Mirrer:

We are pleased that you have accepted our offer for the position of District Manager Unassigned. We feel that you can make a significant contribution to the progress of Payless Shoesource.

The following will highlight the key details:

| | |
|---|---|
| **Job Position:** | District Manager Unassigned |
| **Reporting to:** | Bob Lacher, Director of Retail Operations-East Zone |
| **Start Date:** | To be Determined  4/18/05 |
| **Compensation:** | $4,615.38 biweekly ($120,000 on an annualized basis) |

You will receive a signing bonus of $15,000 (gross) on each of the following dates:

- The first full pay period following completion of new-hire paperwork
- The first pay period following one year of service

Signing bonus payments are subject to the enclosed repayment agreement, and you must be actively employed by Payless ShoeSource on each payment date in order to receive the signing bonus.

| | |
|---|---|
| **Incentive Plan:** | You will be eligible for an incentive plan that is based on Company sales and earning before interest and taxes (EBIT). |

The target incentive for your position is 20% of base compensation. You will be guaranteed a payment of $24,000 for fiscal 2005, payable after the completion of the fiscal year. Details of the incentive plan are included on the enclosed sheet.

Earnings

# PeopleSoft.

Home | Add to Favorites | Sign out

New Window | Customize Page |

Earnings Balances | Earnings Balance Adjustments

| Mirrer,Lee A | Employee | EmplID: 3089881 |
|---|---|---|

| Period Information | | Find | View All | First ◄ 1 of 2 ► Last |
|---|---|---|---|

| Company: | CR | Payless ShoeSource,Inc |
|---|---|---|
| Balance ID: | CY | Calendar Year |
| Balances for Year: | 2006 | |

**Earnings Balances**     Find | View All     First ◄ 24 of 36 ► Last

| Quarter: | Quarter 2 | | |
|---|---|---|---|
| Period: | May | | |
| Earnings Type: | SGN | Signing Bonus | |
| Hours YTD: | | Gross Earnings YTD: | $15,000.00 |
| Hours QTD: | | Gross Earnings QTD: | $15,000.00 |
| Hours MTD: | | Gross Earnings MTD: | $15,000.00 |

Return to Search | 🖼 Notify

Earnings Balances | Earnings Balance Adjustments

## Termination Relocation Repayment Calculation

Terminated Associate Name:  Lee Mirrer _____

Social Security Number:   Redacted for   3600 _____
                          ECF Filing

Effective Date of Repay Agreement:        4/18/2005 _____   (Copy of signed agreement attached)
(Use start date of new job)

Date of Termination:  _____ 1/12/2007 _____

If Payless ShoeSource has paid the following, then the aggregate of such amounts so paid or reimbursed
and of such losses so incurred will be "earned out" proportionately, month by month, over the 24 month
period immediately following the start date of the terminated employee's new job.

    **AMOUNT   EXPENSE DESCRIPTION**

_____ Third Party paid expense total (see attached Transferee Detail Summary)
                    Was the following expenses included in above summary (Y or N)?
                    N    Home Sale Bonus
$ 15,000.00  Signing Bonus(es) or Misc. Expense Allowance Paid to Associate
_____ Any special bonuses paid to Associate (HOME SALE BONUS paid through Payroll)
$    -   Any expenses paid directly for Associate (moving costs, relo repays to old company)

$ 15,000.00  **Total relocation expenses paid**

**Calculated Repayment Amount**

                    Total relocation expenses paid:  $ 15,000.00
              Divided by months in earn out period: _____ 24
                             $   625.00

    Multiplied by # of months remaining on repay agreement  _____ 3

            Total owed to Payless per agreement:  $  1,875.00

_____ Date Associate was informed of amount owed to Payless

_____ Inform terminated employee that any expenses paid after the termination date will be added
                 to the amount owed to Payless.

_Beckie Rouse_ _____        __1/2/07__ _____
Preparer, Beckie Rouse                  Date

_____                _____
Approval, HR Director or above          Date

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS

| | | |
|---|---|---|
| PAYLESS SHOESOURCE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No._____ |
| | ) | |
| LEE A. MIRRER | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION FOR A TEMPORARY RESTRAINING ORDER

Pursuant to K.S.A. § 60-901, Plaintiff Payless ShoeSource, Inc. ("Payless") seeks an order restraining Defendant Lee A. Mirrer ("Mirrer") from violating the noncompetition provisions of the Noncompetition and Company Work-Product Agreement ("Agreement") Mirrer entered into with Payless.

I.    **INTRODUCTION**

This suit arises from Mirrer's decision to leave Payless, where she has been employed as Director of Regional Operations ("DRO") for Payless' Northeastern region, to join a competitor, DSW, in a similar capacity.  As a DRO, Mirrer had access to substantial, detailed, confidential and competitively valuable information about Payless' business, including about Payless' past and future advertising and marketing strategies, promotion calendars, product performance, store sales and profits, new store concepts, upcoming strategies for store openings, and performance targets.

Mirrer's employment with DSW flies squarely in the face of her contractual obligations under her Agreement, in which she agreed, among other things, not to compete with Payless for a period of six months following her employment with Payless.  This Court should grant Payless'

request for a temporary restraining order because: 1) there is a substantial likelihood Payless will prevail on the merits as Mirrer has violated the noncompetition provision of the Agreement by accepting employment with DSW; 2) Payless has no adequate remedy at law and will suffer irreparable injury in the absence of injunctive relief; 3) the threatened injury to Payless outweighs the harm an injunction may inflict on Mirrer; and 4) an injunction will serve the public interest.

## II.   STATEMENT OF FACTS

The relevant facts are set forth in the Verified Petition filed contemporaneously.  In summary, Mirrer served as DRO for Payless' entire Northeastern Region, which consists of New York, Connecticut, Massachusetts, Maine, Rhode Island, New Hampshire, and Vermont.  As DRO, Mirrer led multiple districts in the United States within the Northeastern region and was responsible for ensuring that sales, profits, and inventories were maximized and that expenses were controlled to meet commitments to Payless' associates, customers, shareowners, and business owners.

Mirrer voluntarily agreed to sign the Agreement in exchange for valuable consideration, including a salary increase of $15,000, a relocation bonus equivalent to two months' salary, and eligibility to receive a grant of stock appreciation rights, stock options, and shares of restricted stock from Payless.   The Agreement contains, inter alia, confidentiality and limited noncompetition and nonsolicitation provisions.  The noncompetition provision is only for a period of six months and prohibits Mirrer from being employed by a "Competing Business." "Competing Business" is defined to include any retail business with gross sales or revenue over $25 million and which sells footwear to customers at price points competitive, or likely to be competitive, with Payless, and located within ten miles of any Payless store.

In early January 2007, Mirrer announced she was resigning from Payless and joining a competitor, DSW, in a capacity similar to the DRO position she held with Payless. Payless subsequently sent letters to Mirrer and DSW regarding her noncompetition and other obligations under the Agreement. Nonetheless, despite these letters and her Agreement, Mirrer has joined DSW in breach of her Agreement. Payless seeks a temporary restraining order preventing Mirrer from breaching her obligations under the Agreement.

III.   **ARGUMENT**

A restraining order is appropriate where the party is threatened with immediate and irreparable injury that may occur before the court would otherwise resolve the matter. *Comanche County Hosp. v. Blue Cross of Kan., Inc.,* 228 Kan. 364, 366, 613 P.2d 950, 953 (1980) (purpose of temporary restraining order is to "prevent a threatened act which might perpetrate an injury, lessen the value of a claimed right or cause total loss of a claimed right pending final determination of the controversy"). "A temporary injunction merely preserves the status quo until a final determination of a controversy can be made." *Id.* To obtain a restraining order, a moving party must demonstrate:  1) a reasonable probability of success on the merits; 2) irreparable injury unless the injunctive relief issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunctive relief may cause the defendant; and 4) that the injunction, if issued, would not be adverse to the public interest. *See Wichita Wire, Inc. v. Lenox,* 11 Kan. App. 459, 462, 726 P.2d 287, 290 (1986). Consideration of these factors establishes that Payless is entitled to entry of a temporary restraining order and preliminary injunction.

A.    **There Is a Substantial Likelihood Payless Will Prevail on the Merits.**

This Court must first consider whether Payless has a likelihood of prevailing on the merits of its claims against Mirrer. *See id.* For the following reasons, Payless will likely prevail on the merits of its claims.

Under Kansas law,[1] restrictive covenants are enforceable if such covenants are ancillary to a lawful contract. *Weber v. Tillman*, 259 Kan. 457, 462, 913 P.2d 84, 89 (1996); *Eastern Distrib. Co., Inc. v. Flynn*, 222 Kan. 666, 670, 567 P.2d 1371, 1376 (1977). To be valid and enforceable, noncompetition agreements must satisfy three conditions. *Heatron, Inc. v. Shackelford*, 898 F. Supp. 1491, 1499 (D. Kan. 1995). First, the agreement must be a valid and enforceable contract under general principles of contract law. *Eastern Distrib.*, 222 Kan. at 670, 567 P.2d at 1376. Second, the employer must have a legitimate interest to protect. *Weber*, 259 Kan. at 462, 913 P.2d at 89. Third, the agreement must be reasonable, based upon the particular facts of the case. *Eastern Distrib.*, 222 Kan. at 670, 567 P.2d at 1376. All three conditions are satisfied in this case.

1.    **The Agreement Between Mirrer and Payless Is Enforceable Under General Principles of Kansas Contract Law.**

To be enforceable, a noncompete agreement must be a valid and enforceable contract under general principles of contract law. *Id.* Thus, a noncompetition agreement must be supported by valid consideration to be enforceable. *State ex rel. Ludwick v. Bryant*, 237 Kan. 47,

---

[1]  In contract-based actions, Kansas choice of law rules permit parties to choose the law applicable to their agreement, and as a general rule, Kansas courts apply the law chosen by the parties to control the agreement. *Brenner v. Oppenheimer*, 273 Kan. 525, 538-40, 44 P.3d 364, 374-75 (2002). The Agreement between Payless and Mirrer contains a choice of law provision which provides that all matters arising out of the Agreement shall be governed by and construed in accordance with the laws of the State of Kansas. *See* Agreement, Paragraph 5. Accordingly, this Court should apply Kansas law to this dispute.

50, 697 P.2d 858, 861 (1985).   Under Kansas law, there is a rebuttable presumption that all contracts are supported by consideration. *Id.; Ferraro v. Fink*, 191 Kan. 53, 56, 379 P.2d 266, 269 (1963).   To rebut the presumption, a former employee must present evidence that he or she received no improvement or other consideration at the time the employee signed the covenant. *See id.*   Continued employment can constitute sufficient consideration. *See, e.g., Heatron*, 898 F. Supp. at 1499 (noncompetition agreement supported by sufficient consideration where employee had been promoted); *Puritan-Bennett Corp. v. Richter*, 8 Kan. App. 2d 311, 314-15, 657 P.2d 589, 592 (1983) (sufficient consideration where the employee had been retained, promoted, and entrusted with company secrets for a significant period of time after signing the covenant).   In circumstances of continued employment, "employers rely upon the continued loyalty of an employee as signified by his [or her] signature on a covenant not to compete in dispensing responsibility and rewards."   *Puritan-Bennett*, 8 Kan. App. 2d at 315, 657 P.2d at 592. Accordingly, any "employee who has been retained, promoted and entrusted with company secrets for a significant time after execution of such a covenant has received a benefit to which he [or she] was not automatically entitled." *Id.*

The Agreement signed by Mirrer is valid and enforceable under general principles of contract law.   The Agreement is in writing and signed by both parties.   Additionally, the Agreement is supported by valid consideration.   Mirrer's consideration for signing the Agreement included her receiving a salary increase of $15,000 plus a relocation bonus equivalent to two months' salary as well as eligibility to receive a grant of stock appreciation rights, stock options, and shares of restricted stock from Payless.

The Agreement clearly sets forth the restrictions on Mirrer's post-Payless competitive activities, and competitive employment with DSW is clearly prohibited under the Agreement.

Under Paragraph 2(a) of the Agreement, Mirrer's noncompetition obligations only last for six months after her Payless employment ends. The scope of the noncompete is tied directly into the nature and scope of Payless' business. In light of Mirrer's high-level position, duties and responsibilities with Payless, and the confidential and competitively valuable information she possessed by virtue of her Payless employment, Mirrer had to realize that her employment with DSW was prohibited under the Agreement.

### 2.   Payless Has a Legitimate Interest in Protecting its Confidential and Proprietary Business Information.

Second, an employer must have a legitimate interest to protect in order to enforce a non-competition agreement. *Weber*, 259 Kan. at 462, 913 P.2d at 89. In this context, courts have recognized that employers have a legitimate business interest in protecting confidential business information. *See Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 767, 112 P.3d 81, 89 (Kan. 2005) (compiling cases); *Weber*, 913 P.2d at 91 (same); *see also Farmers Group, Inc. v. Lee*, 29 Kan. App. 2d 382, 390, 28 P.3d 413, 419 (2001) ("Kansas law is clear that an ex-employee may be enjoined from disclosing confidential material and trade secrets gained in the course of his or her employment."); *Heatron*, 898 F. Supp. at 1500 ("Kansas courts have long recognized the employer's right to maintain confidentiality of trade secrets or other commercially sensitive information pertaining to the employer's business practices as an interest entitled to protection.").

Payless' Agreement with Mirrer protects the confidential and proprietary business information to which Mirrer had access in connection with her Payless employment. Payless has expended a great deal of time, money, and effort to develop and maintain its confidential, proprietary, and trade secret information. Paragraph 1(a) of Mirrer's Agreement prevents her from using or disclosing Payless' "Confidential Information" except for authorized use or

821584.1                                              6

disclosure within the scope of her employment with Payless.   The Agreement defines "Confidential Information" as:

> "all non-public information pertaining to Payless' business. Confidential Information includes not only information disclosed by Payless to Executive, but also information developed or learned by Executive during the course of or as a result of employment with Payless, which information shall be the property of Payless. All of Payless' confidential information is and shall be deemed to be Payless' property.  Payless' confidential information includes, without limitation, information and documents concerning Payless' processes;  suppliers (including Payless' terms, conditions and other business arrangements with suppliers); supplier and customer lists; advertising and marketing plans and strategies; profit margins;  seasonal plans, goals, objectives and projections; compilations, analyses and projections regarding Payless' division, stores, product segments, product lines, suppliers, sales and expenses; files; trade secrets and patent applications (prior to their being public); salary, staffing and employment information (including information about performance of other executives); and "know-how," techniques or any technical information not of a published nature relating, for example, to how Payless conducts its business."

Agreement, Paragraph 1(d).

As DRO, Mirrer had access to confidential, competitively valuable and trade secret information of Payless concerning: 1) sales, profits and performance, by store, both within Mirrer's region as well as others; 2) recent and new store concepts developed and under development; 3) past and future promotional calendars for product, marketing, and pricing strategies; 4) product performance, including with respect to strengths, weaknesses, sales, promotions, sales volumes, and profitability by product line; 5) strategies and analyses relating to store openings, targets, and performance; 6) weekly sales figures by district, zone, and concept; 7) current and prospective real estate deals; 8) employee compensation and evaluations; and 9) product distribution and planning.  As recently as November, 2006, Mirrer attended a regional

meeting in which she received information and reports on Payless' tactical plans to improve store operations for 2007 and strategies for performance in 2007.

Mirrer's noncompetition and nondisclosure obligations under the Agreement seek to protect Payless' confidential, competitively valuable and trade secret information. Payless has a legitimate interest to protect and thus has satisfied the second requirement for enforcement of a noncompetition agreement.

### 3.     The Restrictive Covenants Are Reasonable.

To be enforceable, a restrictive covenant must be reasonable. *Eastern Distrib.*, 222 Kan. at 670, 567 P.2d at 1376; *Idbeis*, 279 Kan. at 765, 112 P.3d at 88. "[T]here is no rigid, absolute norm by which the reasonableness of a covenant not to compete may be determined, . . . [but the restriction must be] no greater than fairly required for the protection of the employer." *Heatron*, 898 F. Supp. at 1500-01.  The reasonableness of the restrictions is determined in light of the particular facts and circumstances of each case. *Weber*, 259 Kan. at 464, 913 P.2d at 90.  The time and territorial limitations contained within with covenant are relevant to the determination of reasonableness. *Id.*

Mirrer's noncompetition obligations prevent her from working for a "Competing Business" and last only for six months after her Payless employment ends.   Agreement, Paragraph 2(a).  Kansas courts have enforced non-competition agreements for much longer periods of time. *See, e.g., Heatron*, 898 F. Supp. at 1502 (one-year was reasonable); *Weber*, 259 Kan. at 465, 913 P.2d at 90-91 (upholding two-year restriction); *Eastern Distrib.*, 222 Kan. 666, 567 P.2d 1371 (one-year prohibition reasonable).

"Competing Business" is defined in the Agreement in light of Payless' shoe business and specifically includes:

> "(i)   any retail business with gross sales or revenue in the prior
> fiscal year of more than $25 million (or which is subsidiary,
> affiliate or joint venture partner of a business with gross sales or
> revenue in the prior fiscal year of more than $25 million) which
> sells footwear, socks, underwear, hosiery, sleepwear, or
> accessories at retail to consumers at price points competitive, or
> likely to be competitive with Payless . . . within 10 miles of any
> Payless store or the store of any wholesale customer of Payless in
> the United States, or anywhere in any foreign country in which
> Payless has retail stores, franchises or wholesale customers . . . ."

Agreement, Paragraph 2(b).  As described in the Verified Petition, Payless' business is both

national and international in scope, and the restriction is limited to only those businesses

satisfying the definition of "Competing Business."   Similar restrictions have been upheld by

various courts.  *See, e.g., Gorman Publ'g Co. v. Stillman*, 516 F. Supp. 98, 104 (N.D. Ill. 1980)

(two-year covenant covering the entire United States held valid); *Superior Gearbox Co. v.

Edwards*, 869 S.W.2d 239, 248 (Mo. App. 1993) (nationwide restraint found reasonable);

*Bertotti v. C.E. Shepherd Co.*, 752 S.W.2d 648, 654 (Tex. App. 1988) (two-year covenant

covering the United States and any foreign country in which the company did business,

enforced). [2]

Moreover, Mirrer expressly acknowledged and agreed that the restrictions in the

Agreement were reasonable and enforceable in view of, among other things, the market in which

Payless operates its business, the confidential information to which she had access, and the facts

---

[2] *See also Learn2.Com, Inc. v. Bell*, 2000 U.S. Dist. LEXIS 14283 (N.D. Tex. 2000) (granting
preliminary injunction against software engineer enforcing noncompete with no geographical
limitation, i.e., worldwide); *Nat'l Business Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 708 (E.D.
Pa. 1998) (upholding nationwide noncompete); *Branson Ultrasonics Corp. v. Stratman*, 921 F.
Supp. 909, 913 (D. Conn. 1996) (enforcing international noncompete); *Ferrofluidics Corp. v.
Advanced Vacuum Components, Inc.*, 789 F. Supp. 1201, 1212 (D.N.H.), *aff'd*, 968 F.2d 1463,
1471 (1st Cir. 1992) (former employee enjoined from engaging directly or indirectly in any
business manufacturing or selling rotary seals anywhere in the United States); *System Concepts,
Inc. v. Dixon*, 669 P.2d 421, 427 (Utah 1983) (noncompete covenant with no geographic
restriction upheld where the business and the clientele of the employer were national).

that a Competing Business could benefit greatly if it were to obtain Payless' confidential information and that Payless would not have adequate protection if Mirrer were permitted to work for a Competing Business since Payless would be unable to verify whether its confidential information was being misused. Agreement, Paragraph 2(c). Mirrer further acknowledged that the restrictions in the Agreement were reasonable in view of their limited scope and duration. *Id.*

Given Mirrer's position and responsibilities at Payless, the confidential information she was provided, and the limited duration of the restriction, the Agreement is reasonable, narrowly tailored, and enforceable under Kansas law.

### 4.  Mirrer's Conduct Constitutes a Breach of the Restrictive Covenants.

Mirrer has breached her obligations under the Agreement by joining DSW, a "Competing Business." DSW is a retail business with gross sales or revenue over $25 million and that sells footwear to retail consumers at price points competitive with Payless and within ten miles of Payless stores. Both Payless and DSW sell shoes at retail to consumers and both operate throughout the United States, with DSW having approximately 220 stores in 35 states and Payless more than 4,000 stores located in all 50 states. Both sell shoes at price points within the $10 to $35 price range, and the chains share customers. Additionally, like Payless, DSW operates self-service shoe stores featuring fixtures which allow customers to view, touch, and try on the product without relying on salespersons to check availability of product. In many instances, both Payless and DSW have stores in the same vicinity. DSW is a "Competing Business," and Mirrer's employment by DSW breaches her Agreement.

### B.  Payless Will Suffer Irreparable Harm and Has No Adequate Remedy at Law.

In determining whether injunctive relief is appropriate this Court must consider whether Payless has an adequate remedy at law or whether it stands to suffer irreparable harm. *Wichita*

*Wire*, 11 Kan. App. at 462, 726 P.2d at 290.  It is well-established under Kansas law that breach of a noncompetition agreement often results in irreparable harm for which there is no adequate remedy at law.  *See, e.g., Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 86 F. Supp. 2d 1102, 1108 (D. Kan. 2000) (concluding if employee was not enjoined from breaching the covenant not to compete, plaintiff would suffer irreparable harm); *Uarco Inc. v. Eastland*, 584 F. Supp. 1259, 1262 (D. Kan. 1984) (same; noting that exact damage was uncertain because it was "impossible to foresee exactly how much business the plaintiff will lose as a result of [the breach]"); *see also Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990) (upholding district court's finding of irreparable harm by breach of covenant not to compete "based upon evidence suggesting that it is impossible to precisely calculate the amount of damage plaintiff will suffer") (internal quotation marks and alterations omitted).  Payless cannot be fully or adequately compensated for the loss or misuse of its confidential information, nor can it be fully or adequately compensated for the loss of goodwill that would result if Mirrer breaches her noncompetition and related obligations under the Agreement.  *See Heatron*, 898 F. Supp. at 1502 (finding irreparable harm where, absent injunctive relief, "it would be impossible to precisely calculate the amount of damages [plaintiff] would suffer because of the inherent difficulty in quantifying the loss of [plaintiff's] competitive advantage in the marketplace, and the damages resulting from loss of customers and good will").

Moreover, injunctive relief was expressly contemplated by the parties in their Agreement. In paragraph 6 of the Agreement, Mirrer expressly acknowledged and consented to "an injunction to restrain any such breach or threat of breach" by Mirrer.  Payless is entitled to enforcement of its Agreement and the entry of a temporary restraining order.

**C.**     **The Foreseeable Harm to Payless Outweighs Any Potential Harm to Mirrer.**

To obtain injunctive relief, a moving party must also demonstrate that the threatened injury outweighs any damage the proposed restraining order may cause the opposing parties. *Wichita Wire*, 11 Kan. App. at 462, 726 P.2d at 290. The principles of equity strongly support this Court's granting of injunctive relief on these facts. Money damages cannot adequately compensate Payless for Mirrer's flagrant disregard of her Agreement. Payless has a strong interest in enforcing the Agreement in order to ensure that Mirrer is not in a position with DSW in which she and DSW could take advantage of Payless' Confidential Information.

In contrast, requiring Mirrer to abide by her contractual obligations will not impose any undue hardship on her or anyone else. A covenant under which a former employee "is not restricted from pursuing his chosen profession altogether" does not create an undue burden on the employee. *Weber*, 913 P.2d at 91. Mirrer's Agreement does not prevent her from working in her profession or earning a living, but merely from working for a competitor for a limited period of six months following the termination of her employment with Payless. Mirrer is fully qualified to work in the retail industry in positions that would not violate her Agreement with Payless. And, as noted in the Verified Petition, Payless did not terminate Mirrer; she quit voluntarily, knowing full-well what her obligations were under the Agreement.

Mirrer expressly acknowledges in the Agreement that the restrictions would not "pose an undue hardship" on her. Agreement, Paragraph 2(c)(iii). Having accepted the financial and other benefits of the employment relationship with Payless, Mirrer should not now be allowed to avoid her obligations by claiming that she will suffer some harm or inconvenience. She voluntarily agreed to those restrictions, and Payless' Agreement should be enforced.

D.     The Public Interest Is Best Served By Enforcing Contracts.

The final factor this Court must weigh in determining whether to grant Payless injunctive relief is whether the restraining order would be adverse to the public interest. *Wichita Wire*, 11 Kan. App. at 462, 726 P.2d at 290.   The public has an interest in the enforcement of valid contracts. *Weber*, 913 P.2d at 89 ("It is the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose. It also has been said, and we think rightly, the paramount public policy is that freedom to contract is not to be interfered with lightly.") (internal quotation marks omitted). Moreover, the public has an interest in restraining unfair competitive practices. *Heatron*, 898 F. Supp. at 1502. Restraining Mirrer from breaching her Agreement will advance the public's interest in the enforcement of valid contracts. *See SizeWise Rentals*, 87 F. Supp. 2d at 1200 ("[P]ublic's interest in upholding viable contracts outweighs any potential threat to the public's interest in competition . . . .").

IV.   CONCLUSION

The Agreement prevents Mirrer from working for a Competing Business, where she could use Payless' Confidential Information to help the competition.  Payless is not going to be able to "look over Mirrer's shoulder" while she is at DSW; a nondisclosure provision provides only limited protection.  Mirrer's noncompetition provision provides the additional protection that Payless needs to ensure that Mirrer is not working for a competitor where Payless' Confidential Information would be at a greater risk of being misused.

WHEREFORE, for the reasons set forth in Payless' Verified Petition, its Motion for a Temporary Restraining Order and this Brief in Support, Payless respectfully requests that the Court grant Payless' Motion for Temporary Restraining Order.

Respectfully submitted,

BRYAN CAVE LLP

By: _____

Robert M. Thompson        KS #14673
Staci Olvera Schorgl       KS #19753
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105
(816) 374-3200 (Telephone)
(816) 374-3300 (Facsimile)

ATTORNEYS FOR PLAINTIFF

*Of Counsel*
Mark Deiermann
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone:   (314) 259-2000
Facsimile:   (314) 259-2020
ATTORNEYS FOR PLAINTIFF

821584.4                          14

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS

PAYLESS SHOESOURCE, INC.  )
     Plaintiff,  )
     )
v.  )    Case No._____
     )
LEE A. MIRRER,  )
     )
     Defendant.  )

## <u>PROPOSED TEMPORARY RESTRAINING ORDER</u>

On this _____ day of February, 2007, the Motion for Temporary Restraining Order of Plaintiff, Payless ShoeSource, Inc. ("Payless"), was considered by the Court. The Court, having reviewed the Motion and Supporting Brief and the Verified Petition, finds that Payless has set forth specific facts demonstrating a substantial likelihood that Payless will prevail on its claims, and further notes that the parties themselves contemplated injunctive relief should a dispute arise over their respective obligations in connection with the Noncompetition and Company Work-Product Agreement ("Agreement," a copy of which is attached hereto) between Payless and Defendant, Lee A. Mirrer ("Mirrer"). Mirrer's conduct, unless restrained, stands to cause serious and irreparable harm to Payless and to injure Payless' business. Furthermore, the threatened injury to Payless outweighs any potential harm to Defendant, particularly given the short duration of the requested relief. As a result, the Court finds that issuance of a temporary restraining order is appropriate. Accordingly, the Court finds that the Motion should be and hereby is GRANTED.

IT IS THEREFORE ORDERED, AS OF _____, on this _____ day of February, 2007, THAT:

Defendant Mirrer is precluded and restrained from, directly or indirectly:

(a)     being employed by DSW;

(b)     being employed by any other "Competing Business" as defined in the Agreement, which includes any retail business with gross sales or revenue in the prior fiscal year of more than $25 million (or which is subsidiary, affiliate or joint venture partner of a business with gross sales or revenue in the prior fiscal year of more than $25 million) which sells footwear, socks, underwear, hosiery, sleepwear, or accessories at retail to consumers at price points competitive, or likely to be competitive with Payless, within 10 miles of any Payless store or the store of any wholesale customer of Payless in the United States, or anywhere in any foreign country in which Payless has retail stores, franchises or wholesale customers; and

(c)     using or disclosing any of Payless' "Confidential Information" including all non-public information pertaining to Payless' business. Confidential information includes not only non-public information disclosed by Payless to Mirrer, but also such information developed or learned by Mirrer during the course of or as a result of Mirrer's employment with Payless. Payless' Confidential Information includes, without limitation, all confidential information and documents concerning Payless' processes; suppliers (including Payless' terms, conditions and other business arrangements with suppliers); supplier and customer lists; advertising and marketing plans and strategies; profit margins; seasonal plans, goals, objectives and projections; compilations, analyses and projections regarding Payless' divisions, stores, product segments, product lines, suppliers, sales and expenses; files; trade secrets and patent applications (prior to their being public); salary, staffing and employment information (including information about performance of other executives); and "know-how," techniques or any technical information not of a published nature relating, for example, to how Payless conducts its business.

2

Unless extended by order of this Court, this Temporary Restraining Order will expire at _____ .m. on _____, 2007.

It is further ordered that Payless shall file with the clerk of this Court an injunction bond in the amount of $_____.


DATE:_____


_____

District Judge


Submitted by:

**BRYAN CAVE LLP**


By:_____

Robert M. Thompson      KS #14673
Staci Olvera Schorgl     KS #19753
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105
(816) 374-3200 (Telephone)
(816) 374-3300 (Facsimile)

ATTORNEYS FOR PLAINTIFF


*Of Counsel*
Mark Deiermann
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone:    (314) 259-2000
Facsimile:    (314) 259-2020
ATTORNEYS FOR PLAINTIFF


3

823894.1

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS

| | | |
|---|---|---|
| PAYLESS SHOESOURCE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07C174 |
| | ) | Division 9 |
| LEE A. MIRRER, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF HEARING

Notice is hereby given to the Court and to all parties that a hearing on Plaintiff's

Motion for Temporary Restraining Order will be held on Monday, February 12, 2007 at 10:30

a.m. in Division 9.

Respectfully submitted,

**BRYAN CAVE LLP**

By: _____

Robert M. Thompson        KS #14673
Staci Olvera Schorgl        KS #19753
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105
(816) 374-3200 (Telephone)
(816) 374-3300 (Facsimile)

ATTORNEYS FOR PLAINTIFF

*Of Counsel*
Mark Deiermann
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone:     (314) 259-2000
Facsimile:      (314) 259-2020
ATTORNEYS FOR PLAINTIFF

KC01DOCS\824656.1                                    1